UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

OSCAR EDWARD DELISLE,

    Plaintiff,

  v.            Case No. 23-C-1541

BRIAN EICHE et al.,

    Defendants.

---

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

  Plaintiff Oscar Edward DeLisle, an inmate at the Wisconsin Resource Center, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on Eighth Amendment claims based on allegations that Defendants Brian Eiche and Gregory Peterson were deliberately indifferent to the risk of substantial harm that he posed to himself while he was confined at Waupun Correctional Institution. On October 8, 2024, Defendants moved for summary judgment. For the reasons explained below, the Court will grant the motion and dismiss this case.

### BACKGROUND

  During the relevant time, DeLisle was incarcerated at Waupun Correctional Institution, where Eiche worked as a correctional officer and Peterson worked as a sergeant. On May 29, 2023, Defendants were the only two officers on duty in DeLisle's cell hall during third shift. Peterson's primary responsibility was to staff the sergeant's bubble, which is an enclosed and locked area within the cell hall. One officer must remain in the bubble at all times. Eiche was responsible for conducting wellness and security checks once an hour. Neither Peterson nor Eiche

were assigned to wear body-worn cameras during their shifts. Any inmate who needs help may contact officers during the wellness and security checks. Dkt. No. 22 at ¶¶1-13.

At about midnight on May 29, 2023, Eiche conducted a wellness and security check. Hallway video shows him stopping at DeLisle's cell at about 12:14 a.m. According to DeLisle, he told Eiche that he was about to engage in self-harm and showed Eiche a razor. Eiche asserts that he asked DeLisle if he would be ok while he notified the sergeant on duty, to which DeLisle said yes. DeLisle asserts that Eiche also told him that he had no time for this. Eiche left DeLisle's cell and walked immediately to the bubble to notify Peterson, who ordered Eiche to relieve him in the bubble so he could go talk to DeLisle. According to DeLisle, after Eiche left his cell, he began to cut himself. The cut was just below his knee on the side of his right leg and was about three to four inches long.[1] Dkt. No. 22 at ¶¶14-20; Dkt. No. 38 at 3; Dkt. No. 40 at ¶¶3-5.

Peterson arrived at DeLisle's cell minutes later, at about 12:18 a.m. DeLisle asserts that he showed Peterson the razor and blood on his hand, but Peterson asserts that DeLisle did not show him a razor or inform him that he had already cut himself. Peterson explains that he did not believe DeLisle was in immediate danger of harming himself, and he asked DeLisle if it would be ok if he left his cell to contact a supervisor, to which DeLisle said yes. Peterson explains that he forgot to bring his radio with him when he left the bubble, so he had to leave DeLisle's cell in order to get help as it was unsafe and against policy to enter DeLisle's cell by himself, especially because DeLisle had a cellmate. Dkt. No. 22 at ¶¶21-32; Dkt. No. 38 at 4; Dkt. No. 40 at ¶6.

Peterson left DeLisle's cell less than a minute after he arrived and returned to the bubble to call the on-duty captain. Captain Sankey (who is not a defendant) told Peterson he was on his

---

[1] A photograph of the cut shows a laceration that is inches long with a small trickle of blood. Dkt. No. 22 at 9.

2

way. Captain Sankey and another correctional officer arrived at DeLisle's cell within minutes and removed him from his cell shortly thereafter. DeLisle was escorted to the restricted housing unit where a nurse assessed his self-inflicted injury. She determined that the cut did not require stitches, but DeLisle refused to allow her to apply a bandage because he wanted to go to the hospital to get stitches. DeLisle was then placed in bed restraints because he continued to threaten to harm himself. Peterson and Eiche had no further contact with DeLisle that night. Dkt. No. 22 at ¶¶33-52.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

DeLisle's claim is that Defendants violated his constitutional rights when they demonstrated deliberate indifference to his threats of self-harm. The Seventh Circuit has repeatedly "recognized a jail or prison official's failure to protect an inmate from self-harm as one way of establishing deliberate indifference to a serious medical need." *Miranda v. Cty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018). Of course, holding correctional officers liable for a sane inmate's deliberate decision to harm himself appears to have created a perverse incentive for some inmates to do the very thing that allowing these claims seeks to prevent. *See Goodvine v. VandeWalle*, No. 16-C-890, 2018 WL 460121, at *7, 9 (E.D. Wis. Jan. 17, 2018) ("Goodvine admitted in the course of his testimony that he has successfully sued jail and/or correctional officers on a number of previous occasions for failing to prevent him from harming himself and related claims, and has recovered at least $25,000 in settlements with the State."). Despite this obvious opportunity for abuse, the rule imposing liability on prison guards for deliberate indifference to the risk of a prisoner harming himself is well-established, and it is that law on which DeLisle's claims are based.

That said, not every claim by a prisoner that he did not receive adequate protection will succeed. *See Phillips v. Diedrick*, No. 18-C-56, 2019 WL 318403, at *2 (E.D. Wis. Jan. 24, 2019). To prevail on such a claim, a plaintiff must provide evidence showing that Defendants (1) were aware of an objectively serious risk of harm to him and (2) knowingly or recklessly disregarded it. *Szopinski v. Koontz*, 832 F. App'x 449, 451 (7th Cir. 2020) (citations omitted).

DeLisle apparently has a well-known history of self-destructive behaviors such that it would be reasonable for a jury to conclude that he posed an objectively serious risk to his own health and safety. The question presented by this case is whether a jury could reasonably conclude

4

that each Defendant consciously disregarded that risk. For the reasons explained below, the Court concludes that it could not.

The Seventh Circuit has clarified that "[t]he test of deliberate indifference ensures that the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). "Indeed, prison officials who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent." *Id.*; *see also Pulera v. Sarzant*, 966 F.3d 540, 555-56 (7th Cir. 2020) (finding response to attempted suicide was reasonable given the chaotic circumstances because "the Constitution does not demand perfection").

Based on the record, no jury could reasonably conclude that Eiche or Peterson was deliberately indifferent to the risk of harm DeLisle posed to himself. Defendants acted promptly, if not perfectly, in response to DeLisle's threats. DeLisle focuses on the fact that Defendants both left his cell front after he told them he wanted to harm himself, but he ignores the reason they left, which was to go get help for him. Defendants explain that it is unsafe and against policy for a single officer to enter an inmate's cell. This is especially so given DeLisle's frame of mind, the fact that he had a razor and was willing to use it, and that the officer would have been outnumbered by DeLisle and his cellmate. And, while Defendants concede that it would have been preferable to have radioed for help while remaining at DeLisle's cell, the Constitution does not require that prison staff choose the best course of action. In any event, given Defendants' belief that DeLisle did not pose an immediate risk of harm to himself, their decision to briefly leave his cell to get help amounts to negligence at most, which is not actionable under the Constitution.

DeLisle also highlights that Eiche muttered that he did not have time for this as he walked away from DeLisle's cell. But Eiche's expression of frustration did not impact how he acted—which was to immediately proceed to the bubble to inform Peterson of DeLisle's threats. Peterson then promptly went to DeLisle's cell, and within ten minutes of his first threat, DeLisle was removed from his cell and assessed by a nurse. Defendants acted quickly, professionally, and reasonably, and no jury could conclude on this record that they were deliberately indifferent to DeLisle's threats of self-harm. Accordingly, Defendants are entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 20) is **GRANTED** and this action is **DISMISSED**. The clerk of court is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 31st day of December, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.